BILAL A. ESSAYLI
First Assistant United States Attorney
ALEXANDER SCHWAB
Assistant United States Attorney
Acting Chief, Criminal Division
IAN V. YANNIELLO (Cal. Bar No. 265481)
GREGORY W. STAPLES (Cal. Bar No. 155505)
DANIEL H. WEINER (Cal. Bar No. 329025)
Assistant United States Attorneys
     1400/1500 United States Courthouse
     312 North Spring Street
     Los Angeles, California 90012
     Telephone: (213) 894-3667/3535/0813
     Facsimile: (213) 894-0142
     E-mail:    ian.yanniello@usdoj.gov
                greg.staples@usdoj.gov
                daniel.weiner@usdoj.gov

Attorneys for Plaintiff
UNITED STATES OF AMERICA

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| UNITED STATES OF AMERICA, | No. CR 24-621(B)-MWF |
|---|---|
| Plaintiff, | GOVERNMENT'S SECOND SUPPLEMENTAL MEMORANDUM IN OPPOSITION TO DEFENDANT DURK BANKS' MOTION FOR A BILL OF PARTICULARS |
| v. | |
| DURK BANKS, et al., | |
| Defendants. | |

Plaintiff United States of America hereby files this Second Supplemental Memorandum in Opposition to Defendant Durk Banks' Motion for a Bill of Particulars (Dkt. 227).

///

///

1    This filing is based upon the attached memorandum of points and
2 authorities, the files and records in this case, and such further
3 evidence and argument as the Court may permit.

Dated: January 23, 2026            Respectfully submitted,

                                              BILAL A. ESSAYLI
                                              First Assistant United States Attorney

ALEXANDER B. SCHWAB
Assistant United States Attorney
Acting Chief, Criminal Division

     /s/
IAN V. YANNIELLO
GREGORY W. STAPLES
DANIEL H. WEINER
Assistant United States Attorneys

Attorneys for Plaintiff
UNITED STATES OF AMERICA

2

**MEMORANDUM OF POINTS AND AUTHORITIES**

At its core, defendant Banks' supplemental memorandum to his motion for a bill of particulars requests that the Court order the government to certify the details of its April 2026 trial presentation. (Dkt. 339.) Specifically, the filing attempts to summarize a limited set of materials produced in discovery[1] and requests that the Court require the government to "affirm the defense's understanding" of how the government will prove its case. (Id. at 4.) The request is contrary to binding law and should be rejected as meritless, just like the Court ruled as to the similar request to dismiss the Second Superseding Indictment ("SSI") for vagueness.

As set forth in the government's opposition to defendant Banks' motion and its first supplemental memorandum, Ninth Circuit law is clear that a bill of particulars is not meant to provide the defendant with all of the evidence that the government will introduce at trial, nor as a tool for "complete discovery of

---

[1] In response to a claim in defendant's reply brief that "nowhere does the discovery set forth anything resembling a fixed or coherent theory," the government lodged under seal six files that undermined defendant's claim. (See Dkt. 293.) While the selected discovery the government filed with the Court contains clear evidence that defendant Banks directed the attempt to kill Tyquian Bowman in Los Angeles, and that defendant Banks made clear to co-conspirators that anyone who killed Bowman would be rewarded, defendant appears to suggest that the government is bound by only evidence contained within the files lodged with the Court. The government has not represented that was the case, nor is that the law, as acknowledged by the Court during the January 7 hearing. See 11/18/25 RT at 37-38 ("[T]he defense is not entitled to … essentially a pre-transcript of what the Government is going to say in its opening statement. And moreover, as it said, the government correctly said, there might be more evidence. There might be different evidence. And as to that, the concern that the defense has on the moving target is, as I said, met with the Jencks Act."). The government, however, submits that the lodged documents are more than sufficient for the Court to deny defendant's request for a bill of particulars.

the government's evidence." United States v. Giese, 597 F.2d 1170, 1180-81 (9th Cir. 1979). Rather, the purpose of the relief is to ensure only that a defendant is aware of "the *theory* of the government's case." United States v. Ryland, 806 F.2d 941, 942 (9th Cir. 1986) (emphasis in original); see also Giese, 597 F.2d at 1180-81 (details of "'when, where [or] how' of every act in furtherance of the conspiracy" is not proper subject of bill of particulars). Indeed, this is why courts routinely deny requests like defendant Banks' request here. See, e.g., United States v. DiCesare, 765 F.2d 890, 897-98 (9th Cir. 1985), amended, 777 F.2d 543 (9th Cir. 1985) (denying motion requesting names of any unknown coconspirators, exact date on which the conspiracy allegedly began, and to delineate all other overt acts that comprised the charged activity); Cook v. United States, 354 F.2d 529, 531 (9th Cir. 1965) (same as to all overt acts); United States v. Long, 449 F.2d 288, 294-95 (8th Cir. 1971) (same as to exact times); Wilkins v. United States, 376 F.2d 552, 562-63 (5th Cir. 1967) (same as to names of all co-conspirators).

Here, the detailed SSI, together with the government's substantial and organized discovery, "obviates the need for a bill of particulars" because they provide clear notice to defendants of the government's murder-for-hire theory. Giese, 597 F.2d at 1180. The government has alleged --- and its discovery clearly supports --- the straightforward theory that defendant Banks told co-conspirators he would reward anyone who helped kill his rival Tyquian Bowman; that defendant Banks and other OTF co-conspirators attempted to murder Bowman in Los Angeles on August 18, 2022; and that even though the co-conspirators killed S.R. --- not Bowman --- defendant Banks

4

nonetheless rewarded co-conspirators by, among other things, featuring many of the direct participants in the murder in music videos and rap lyrics in the months following the murder. For example, the government anticipates that a cooperating witness will testify that defendant Banks made clear to the witness and other OTF members that anyone who killed Bowman would be made "straight" (i.e., handsomely rewarded)."[2] The discovery also shows that defendant Banks used his trusted lieutenants (defendant Wilson and Co-Conspirator 5) to recruit hitmen to fly to Southern California on August 18, 2022 to kill Bowman. Consistent with defendant Banks' promise to reward co-conspirators, defendant Wilson solicited hitmen by promising to pay a $1,000,000 reward on behalf of defendant Banks in exchange for flying to Los Angeles to commit the murder. Moreover, the government has also disclosed a list of defendant Banks' and OTF's music videos in which defendants Wilson, Houston,

---

[2] Defendant Banks' use of coded language (make anyone who killed Bowman "straight") to communicate the bounty plainly satisfies the quid-pro-quo requirement of the murder-for-hire statute, Section 1958(a). See United States v. Phillips, 929 F.3d 1120, 1124 (9th Cir. 2019) ("The words 'as consideration for' do not strictly import contract law, but instead require a clear mutual agreement between the solicitor and hitman of payment in exchange for murder."). The nature, breadth, and context of defendant Banks' promise includes downstream economic benefits the co-conspirators received following the murder. Indeed, the statutory language of section 1958(a) "sweeps in 'anything of value' of which 'the primary significance ... is economic advantage. This broadly applies to currency, drugs, weapons, or anything else that has a quantifiable monetary value." Phillips, 929 F.3d at 1124; see also United States v. Gibson, 530 F.3d 606, 609-11 (7th Cir. 2008) (concluding that district court properly instructed jury that "not only money, but also drugs, guns, or involvement in future crimes which would yield cash profits, can also constitute consideration" under § 1958). For that reason, defendant Banks' contention that the "grills" rewarded to certain co-conspirators fall outside of the SSI's allegations are meritless, as the SSI and discovery put defendants on more-than-adequate notice of the rewards (including payments covering jewelry) that defendant Banks gave to the hitmen to make them "straight" following the murder.

and others involved in the murder scheme are prominently featured following S.R.'s death.[3]  Because the government's theory of the case is clear, defendant's request for a bill of particulars should be denied.

Indeed, the purpose of a bill of particulars is to enable a defendant to prepare for trial, to avoid or minimize the danger of surprise at the time of trial, and to afford protection of the Double Jeopardy Clause in the event of a successive prosecution.  It is *not* to force the government to preview the details of its trial strategy.  And while defendants are rightfully entitled to meaningful discovery to present a defense, they "are not entitled to a roadmap of how the Government will attempt to prove its case, a laundry list of each act the Government considers significant, or a flow chart of the Government's advocacy theories." United States v. Rankin, 422 F. Supp. 3d 564, 594 (D. Conn. 2019); United States v. Kendall, 665 F.2d 126, 135 (9th Cir. 1981) (stating that "[t]he defendant's constitutional right is to know the offense with which he is charged, not the details of how it will be proved.").  In light of the detailed SSI and thorough discovery setting forth the government's theory of this case, the Court should deny the motion.

---

[3] Consistent with the direction provided by the Court during the January 7 hearing, the government provided defendants with a revised disclosure related to music admissions the government intends to introduce at trial.  Defendants will file a response to that disclosure on January 23, 2026; the government will respond on January 30, 2026; and defendants will file reply briefs, if any, on or before February 3, 2026.

6