TILLET J. MILLS II (Bar No. 24098113)
LAW OFFICE OF TILLET J MILLS II PLLC
4101 Greenbriar, Suite 210
Houston, Texas 77098
Telephone: (281) 767-9717
Email: tillet@tilletjmills.com

**Attorney for Defendant**
**DAVID LINDSEY**

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| UNITED STATES OF AMERICA,<br>Plaintiff,<br>v.<br>DURK BANKS, et al,<br>Defendant. | Case No. 2:24-cr-00621-MWF-4<br><br>**DEFENDANT LINDSEY'S REPLY IN SUPPORT OF RENEWED MOTION FOR JUDGMENT OF ACQUITTAL ON COUNTS ONE, TWO, AND THREE (FED. R. CRIM. P. 29(c)) AND, IN THE ALTERNATIVE, FOR A NEW TRIAL (FED. R. CRIM. P. 33) [DKT. 732]**<br><br>**Hearing: October 28, 2026, at 2:00 p.m., Courtroom 5A, Hon. Michael W. Fitzgerald** |

Defendant DAVID LINDSEY, by and through his Counsel of Record, Tillet J. Mills II, respectfully submits this Reply in support of his Renewed Motion for Judgment of Acquittal under Federal Rule of Criminal Procedure 29(c) and, in the alternative, for a New Trial under Rule 33 (Dkt. 732) (the "Motion"), and in response to the Government's Omnibus Opposition (Dkt. 749) (the "Opposition").

This Reply follows the Motion's conventions. The Counts are numbered as on the Verdict Form, as the Opposition also numbers them (Opp. at 3). The Motion is cited by section ("Mot. § III.B"), the Opposition by its internal page numbers ("Opp. at 16"), and the trial transcript by date or volume. The transcripts are filed at Dkts. 681-706; the pages cited here that are not reproduced in Exhibit A to the Motion are attached as Exhibit D to the supplemental declaration filed with this Reply. The Government's designations for

its three cooperating witnesses are used with their names: Kacey Hester (PW-1), Kavon Grant (PW-2), and Keith Jones (PW-3).

## TABLE OF CONTENTS


I. INTRODUCTION ........ 6

II. COUNT THREE - THE STALKING OF SAVIAY'A ROBINSON ........ 6

A. The Opposition does not address the element the Court gave the Jury ........ 6

B. The evidence the Opposition cites does not show an intent directed at Saviay'a Robinson ........ 8

C. Aiding and abetting and co-conspirator liability presuppose the offense ........ 10

III. COUNT TWO - THE STALKING OF TYQUIAN BOWMAN ........ 12

A. The Opposition concedes that the alleged course of conduct never reached its object before the shooting ........ 12

B. The reasonable-fear alternative ........ 13

C. The substantial-emotional-distress alternative ........ 14

IV. COUNT ONE - THE CONSPIRACY TO STALK TYQUIAN BOWMAN ........ 16

V. IN THE ALTERNATIVE, THE COURT SHOULD GRANT A NEW TRIAL UNDER RULE 33 ........ 17

A. The standard ........ 17

B. The weight of the evidence ........ 17

C. Joinder and the evidentiary rulings ........ 18

D. The instructions ........ 21

E. Cumulative effect ........ 23

VI. CONCLUSION ........ 23

## TABLE OF AUTHORITIES

**Cases**

*Bollenbach v. United States*, 326 U.S. 607 (1946) ........ 22
*Bourjaily v. United States*, 483 U.S. 171 (1987) ........ 19
*Grunewald v. United States*, 353 U.S. 391 (1957) ........ 20
*Krulewitch v. United States*, 336 U.S. 440 (1949) ........ 19
*United States v. Alston*, 974 F.2d 1206 (9th Cir. 1992) ........ 17
*United States v. Anguiano*, 873 F.2d 1314 (9th Cir. 1989) ........ 22
*United States v. Archer*, 977 F.3d 181 (2d Cir. 2020) ........ 17
*United States v. Castaneda*, 9 F.3d 761 (9th Cir. 1993), *overruled on other grounds by United States v. Nordby*, 225 F.3d 1053 (9th Cir. 2000) ........ 12
*United States v. Castro Alavez*, 167 F.4th 1056 (9th Cir. 2026) ........ 14
*United States v. Conlan*, 786 F.3d 380 (5th Cir. 2015) ........ 10
*United States v. Echeverry*, 698 F.2d 375 (9th Cir.), *modified*, 719 F.2d 974 (9th Cir. 1983) ........ 22
*United States v. Elkins*, 725 F. Supp. 3d 570 (N.D. Tex. 2024), *aff'd in part, vacated in part on other grounds*, 161 F.4th 899 (5th Cir. 2025) ........ 15
*United States v. Eubanks*, 591 F.2d 513 (9th Cir. 1979) ........ 20
*United States v. Fielding*, 645 F.2d 719 (9th Cir. 1981) ........ 20
*United States v. Gonzalez*, 905 F.3d 165 (3d Cir. 2018) ........ 10, 12
*United States v. Gracidas-Ulibarry*, 231 F.3d 1188 (9th Cir. 2000) (en banc) ........ 14
*United States v. Hadley*, 918 F.2d 848 (9th Cir. 1990) ........ 14
*United States v. Kellington*, 217 F.3d 1084 (9th Cir. 2000) ........ 17
*United States v. Lapier*, 796 F.3d 1090 (9th Cir. 2015) ........ 22
*United States v. Lincoln*, 630 F.2d 1313 (8th Cir. 1980) ........ 17
*United States v. Macias-Valencia*, 510 F.3d 1012 (9th Cir. 2007) ........ 14
*United States v. Marcello*, 731 F.2d 1354 (9th Cir. 1984) ........ 18

*United States v. Matta-Ballesteros*, 71 F.3d 754 (9th Cir. 1995), *amended*, 98 F.3d 1100 (9th Cir. 1996) .......... 12
*United States v. Osinger*, 753 F.3d 939 (9th Cir. 2014).......... 7
*United States v. Payseno*, 782 F.2d 832 (9th Cir. 1986).......... 22
*United States v. Ruiz*, 710 F.3d 1077 (9th Cir. 2013) .......... 22
*United States v. Sauza-Martinez*, 217 F.3d 754 (9th Cir. 2000) .......... 21
*United States v. Shrader*, 675 F.3d 300 (4th Cir. 2012).......... 7, 10
*United States v. Thongsy*, 577 F.3d 1036 (9th Cir. 2009).......... 22
*United States v. Uhlenbrock*, 125 F.4th 217 (5th Cir. 2024) .......... 14

**Statutes**

18 U.S.C. § 371 .......... 12
18 U.S.C. § 924(c).......... 15
18 U.S.C. § 2261(b)(1).......... 14
18 U.S.C. § 2261A .......... 10, 13, 14

**Rules**

Fed. R. Crim. P. 29.......... 1
Fed. R. Crim. P. 33.......... 1, 6, 17, 23
Fed. R. Evid. 104(a) .......... 19
Fed. R. Evid. 801(d)(2)(E) .......... 20

## MEMORANDUM OF POINTS AND AUTHORITIES

## I. INTRODUCTION

Count Three required proof that someone intended to kill, injure, harass, or intimidate Saviay'a Robinson - intent "as to a particular person." (Instruction No. 26.) The Opposition does not quote that sentence or the statements the Court made in settling it, and it cites no witness who said that anyone's purpose was directed at Saviay'a Robinson. Every participant the Government called named Tyquian Bowman as the object of what was done, and the Opposition does not mention that testimony. What it argues instead - an intent to kill "any of" the people in the Escalade (Opp. at 16) - is the theory the Court said would not suffice: it is not enough that "there might be somebody else in the Escalade with Quando Rondo"; the Government had to prove a focus on "particular people." (RT 9/4/26, Vol. XII, 17:15-21.) The Opposition's fallback to aiding and abetting and co-conspirator liability does not address the first element of either instruction, which is that someone committed the stalking of Saviay'a Robinson.

On Count Two, the Opposition concedes the fact on which the Count turns. It calls the course of conduct "largely clandestine" (Opp. at 1), states that Tyquian Bowman and Saviay'a Robinson "only became aware of the course of conduct when three of the conspirators ambushed them at a gas station" (Opp. at 12), and says that the surveillance and following "went undetected" (Opp. at 15). The fear and distress it describes are the fear and distress of the shooting.

On Count One, the Opposition answers an argument the Motion did not make, and its statement that Mr. LINDSEY "agreed to participate" (Opp. at 4) cites nothing in the record. On Rule 33, it applies a Second Circuit standard in place of this Circuit's, answers the trial record of joinder with a pretrial order, and in two places answers a ruling other than the one the Motion challenged. Mr. LINDSEY also corrects two statements in his own Motion (Section V.C); neither changes the analysis.

## II. COUNT THREE - THE STALKING OF SAVIAY'A ROBINSON

### A. The Opposition does not address the element the Court gave the Jury

Instruction No. 26 required the Government to prove that the defendant "possessed the intent to kill, injure, harass, or intimidate Saviay'a Robinson," or "placed under surveillance with intent to kill, injure, harass, or intimidate Saviay'a Robinson," and it told the Jury that "[t]he government must prove the required intent as to a particular person (for this Count, Saviay'a Robinson)." (Dkt. 652 at 31:8-12, 31:26-27.) In settling that sentence, the Court described the burden it imposed: the Government would have to prove that the participants had "enough awareness of who was in the Escalade and what was going to happen that ... it wasn't just, oh, there is -- there might be somebody else in the Escalade with Quando Rondo, but rather, there were particular people," and it would "have to convince the jury that their focus was on that particular person." (RT 9/4/26, Vol. XII, 17:15-21, 18:5-7.) The Court observed that "the Government doesn't seem to dispute that." (Id. at 17:22-23.) The Opposition does not mention the sentence or the Court's statements. The Ninth Circuit reads the statute the same way. Describing the elements in the Fourth Circuit's terms, it has said that the defendant must hold the required intent toward a person and pursue "that intention through a course of conduct," and that "the defendant's conduct must in fact cause substantial emotional distress to the intended victim or place that person in reasonable fear of the death of, or serious bodily injury." *United States v. Osinger*, 753 F.3d 939, 947 (9th Cir. 2014) (quoting *United States v. Shrader*, 675 F.3d 300, 310 (4th Cir. 2012)).

What the Opposition argues instead is the proposition the Court rejected. It says that the participants "knew there were multiple people traveling with Bowman in the Victim Vehicle, and placed everyone in that car under surveillance with the intent to kill any of them, and at minimum intimidate all of them." (Opp. at 16.) Knowing that a target has company is the "there might be somebody else in the Escalade" that the Court said would not suffice, and an intent to kill "any of them" is not an intent "as to a particular person." The Motion addressed that theory in advance (Mot. § III.F), and the Opposition does not respond. The Government's closing put Count Three to the Jury the same way: "[t]he purpose of the conspiracy was to kill Quando Rondo," and the death of another

was "foreseeable." (RT 9/8/26, Vol. XIII, 35:5-10.) It told the Jury that the shooters "unleashed a barrage of gunfire, missing their intended target and killing Saviay'a Robinson," having named "their intended target, Quando Rondo" (id. at 27:3-6, 25:20-24; see id. at 26:2-6), and that they "didn't care about the other people at that gas station" (id. at 27:7-8) - indifference, which is not an intent directed at a particular person.

The Opposition's factual premise is not supported by the record it cites. Its footnote states that PW-1 and PW-2 "saw Bowman, Robinson, and Bowman's other friends leave their hotel." (Opp. at 7 n.2 (citing RT 9/1/26, Tr. 98-100).) On those pages, Mr. Grant testified that he "couldn't exactly identify" the people with Bowman and that, "based upon Instagram posts and stories, it was Lul Tim and his other friends." (RT 9/1/26, Tr. 98:17-20.) Lul Tim, as Mr. Grant testified the same day, is Timothy Leeks. (Id. at 15:14-17.) Saviay'a Robinson's name does not appear on those pages. What the Opposition calls Bowman's "entourage" (Opp. at 6, 10, 13, 15-17) is a group, and knowledge of a group is what the Court said would not suffice.

**B. The evidence the Opposition cites does not show an intent directed at Saviay'a Robinson**

The Opposition's affirmative evidence on Count Three is one passage of Mr. Grant's testimony, the "machinegun," and the "indiscriminate fire at the gas station." (Opp. at 16.) None of it shows an intent directed at Saviay'a Robinson.

The passage. Mr. Grant testified to an idea to "box them in on the freeway" and "light the truck up." (RT 9/1/26, Tr. 105:13-19.) The Opposition emphasizes "them" and "they" (Opp. at 16), but the passage describes a vehicle. In words of Mr. Grant's that the Opposition's ellipsis omits, "they are not going 75, 80 miles per hour" (Tr. 105:17), and the Government's next question was, "By 'light the truck up,' you mean shoot the vehicle?" (Tr. 105:20-21). The Government's own questions named the object. It asked whether there were "discussions about committing the murder on the freeway" (Tr. 105:9-10) - one murder - and, two pages earlier, whether the participants were "driving around to figure out the best way to kill Quando" (Tr. 103:18-20). The witness who

described the freeway idea is the witness who testified that Saviay'a Robinson was not the intended target - "No." "Who was?" "Quando Rondo." (RT 8/31/26, Tr. 276:9-12) - and who, asked the next day about the killing of Saviay'a Robinson, answered that he "wasn't the intended target." (RT 9/1/26, Tr. 58:24-25.) And when the Government asked Mr. Jones whether there had been "any discussion in the car to shoot at Quando Rondo in traffic," he testified that the whole car said no: "Bad idea because we didn't know if we was going to get Quando." (RT 8/31/26, Tr. 108:21-109:15.) A plan rejected because it might not reach Quando Rondo was a plan aimed at Quando Rondo. The Opposition's factual claim on this element is that the participants "knew there were multiple people traveling with Bowman in the Victim Vehicle." (Opp. at 16.) The shooter who fired, on the Government's account, answered that claim under oath: "And the truth is, you really didn't even know what you were firing at. You didn't know who was in that car." "That's true." (RT 8/27/26, Tr. 220:9-11.) The third participant, shown the photograph of the shooting, testified, "I don't know his name, but you just said his name," and that his intended target was "Quando Rondo." (RT 8/31/26, Tr. 32:6-12.) The Government's own lead detective agreed that his bureau's intelligence bulletin describes Saviay'a Robinson as "an associate of Mr. Bowman who was struck in the crossfire," that he testified to no record made before August 19, 2022 "naming Saviay'a Robinson a target of anything by anyone," and that "there is no evidence" that Mr. LINDSEY "even knew his name before August 19th." (RT 8/25/26, Tr. 127:12-25.) Knowing that a man has company is not awareness of "particular people," and a shooter who did not know who was in the car had no focus on any of them.

The weapon and the gunfire. The Opposition relies on the weapon and the "indiscriminate fire" (Opp. at 16). That is the final act. Instruction No. 26 requires that the intent be pursued "through a course of conduct" - "a pattern of conduct composed of two or more acts, evidencing a continuity of purpose" (Dkt. 652 at 31:14-16, 32:4-5) - and the Opposition's own authority explains what that requires: "The focus is not on the individual acts as separate, distinct events, but instead on the purpose and scope of the

defendants' pattern of stalking conduct as a whole." *United States v. Gonzalez*, 905 F.3d 165, 186 (3d Cir. 2018) (quoted at Opp. at 23). On every participant's account, the object of that pattern was Quando Rondo (Mot. § III.F (collecting testimony)). The manner of the final act cannot supply a purpose the pattern never had, and the killing of a man who, in the Government's witness's words, "wasn't the intended target" (RT 9/1/26, Tr. 58:25) is not an intended one.

The theory the Opposition now offers - an intent to kill "any of them" - is an inference about the moment of firing: that a man who shoots into an occupied vehicle intends to kill whoever is in it. That is a doctrine of homicide law. It was not charged (Count Three names S.R.), and it was not instructed (Instruction No. 26 requires intent "as to a particular person," pursued "through a course of conduct"). Nor does it fit the element. The intent § 2261A(2) requires "modifies the cumulative course of conduct as a whole," *United States v. Conlan*, 786 F.3d 380, 386 (5th Cir. 2015) (quoting *Shrader*, 675 F.3d at 311); an intent that appears only in the last seconds at the gas station is not the intent with which the following, the surveillance, and the tracking were pursued.

Intimidation. The Opposition's fallback - an intent "at minimum" to "intimidate all of them" (Opp. at 16) - contradicts its own description of the plan. A course of conduct the Opposition calls "clandestine" (Opp. at 1, 12), whose surveillance and following "went undetected" (Opp. at 15), was not a plan to intimidate anyone. The Government's lead detective, asked by the Court what he meant by an "ambush shooting," answered that the occupants were "not knowing that these suspects were coming for them." (RT 8/24/26, Tr. 128:12-18.) No one sets out to intimidate a person by making sure he never knows he is being followed.

That Saviay'a Robinson was in the car (Opp. at 7) is the Opposition's premise. It is not proof that the course of conduct was directed at him. Following a vehicle to find one man is not a course of conduct directed at the others in it. (Mot. § III.D.)

**C. Aiding and abetting and co-conspirator liability presuppose the offense**

The Opposition's second answer is that the Jury "may have convicted defendants under an aiding and abetting or *Pinkerton* theory of liability." (Opp. at 16.) The Motion showed that each route fails at its first element (Mot. §§ III.G, III.H), and the Opposition does not engage that showing.

Aiding and abetting. Instruction No. 28's first element is that "someone else committed the crime of stalking Saviay'a Robinson as alleged in Count Three," and the instruction requires advance knowledge of "the specific crime charged in the count you are considering -- for Count Three, the stalking of Saviay'a Robinson. Advance knowledge of some other crime, or of conduct directed at some other person, is not sufficient." (Dkt. 652 at 35:11-12, 36:5-9.) The Opposition does not quote either sentence. The Government's case, which the Opposition itself calls a "conspiracy to kill Bowman" (Opp. at 16), is advance knowledge of conduct directed at some other person.

Co-conspirator liability. The Opposition asserts that "a rational juror could have well-found that any one of the conspirators possessed the requisite intent as a principal for the stalking of Mr. Robinson." (Opp. at 17.) It does not say which conspirator, or point to the evidence that would show it. Instruction No. 30's first element requires that "a person named in Count Three of the indictment committed the crime of stalking Saviay'a Robinson." (Dkt. 652 at 38:11-12.) *Pinkerton* attributes an offense to a conspirator only after someone has committed it. If no participant held the intent Instruction No. 26 requires - and Sections II.A and II.B show that none did - there is no offense to attribute. (Mot. § III.H.)

The fifth element fails as well. It requires that "the offense fell within the scope of the unlawful agreement and could reasonably have been foreseen to be a necessary or natural consequence of the unlawful agreement." (Dkt. 652 at 38:24-27.) The Opposition describes that agreement as one directed at Bowman: a "years-long conspiracy to kill Bowman" (Opp. at 16), "the unlawful agreement to stalk and kill Bowman" (Opp. at 17), "the conspiracy to stalk and kill Bowman" (Opp. at 18). The Government told the Jury the same thing: "The purpose of the conspiracy was to kill Quando Rondo." (RT 9/8/26,

Vol. XIII, 35:5-6.) It had just "summarized" Instruction No. 30 for the Jury in three elements - membership in "the conspiracy to stalk Quando Rondo," that "a co-conspirator ended up stalking Saviay'a Robinson," and that this was "a foreseeable and natural consequence from the conspiracy" (id. at 34:24-35:4) - omitting the crime and intent that define the first element and the scope half of the fifth. The Opposition argues the same three. (Opp. at 16-17.) And the Court, at sidebar during trial, described the Government's case the same way: "the conspiracy here is a conspiracy to stalk and kill Mr. Bowman." (RT 8/26/26, Tr. 246:5-6.) An agreement whose object, on the Government's every account, was one man does not encompass the stalking of another. Whether a death in the shooting was foreseeable is a separate question, and the fifth element requires both showings. (Mot. § III.H.) Nor is foreseeability presumed: in this Circuit "there is no presumption of foreseeability," and the burden of proving foreseeability remains on the Government. *United States v. Castaneda*, 9 F.3d 761, 767 (9th Cir. 1993), *overruled on other grounds by United States v. Nordby*, 225 F.3d 1053 (9th Cir. 2000).

The Opposition's two authorities do not reach the question. In *United States v. Matta-Ballesteros*, 71 F.3d 754 (9th Cir. 1995), *amended*, 98 F.3d 1100 (9th Cir. 1996), the conspiracy and the substantive kidnapping were directed at the same federal agent, and the contention the Opposition quotes concerned the sentence a § 371 conviction would carry. (Opp. at 23-24.) In *Gonzalez*, the conspiracy and the substantive stalking counts were directed at the same victim. 905 F.3d at 174. Neither case holds a conspirator liable for stalking a person outside the object of the agreement.

Finally, the Opposition does not address the death-results finding under Instruction No. 27, which the Jury was to reach only "[i]f you find a defendant guilty of stalking Saviay'a Robinson as charged in Count Three." (Dkt. 652 at 34:2-3.) It falls with the Count.

## III. COUNT TWO - THE STALKING OF TYQUIAN BOWMAN

### A. The Opposition concedes that the alleged course of conduct never reached its object before the shooting

The Opposition's account of Count Two rests on a fact it states three times. The course of conduct was "largely clandestine" (Opp. at 1); Bowman and Robinson "only became aware of the course of conduct when three of the conspirators ambushed them at a gas station" (Opp. at 12); and "the conspirators' days-long surveillance and following of Bowman went undetected" (Opp. at 15). That has been the Government's description from the start. Its Opening Statement told the Jury, "What Quando Rondo and Saviay'a Robinson didn't know was that they were being followed" (RT 8/24/26, Tr. 12:16-17), and its lead detective, asked by the Court what he meant by an ambush, answered that the occupants were "not knowing that these suspects were coming for them" (id. at 128:12-18). The question is what follows from that concession.

**B. The reasonable-fear alternative**

The Court instructed the Jury that "[t]o satisfy the reasonable-fear alternative, the government must prove that the alleged course of conduct placed Tyquian Bowman (a/k/a 'Quando Rondo') in fear of death or serious bodily injury," and that "[t]he fear must have been reasonable under the circumstances known to Tyquian Bowman (a/k/a 'Quando Rondo') at the time." (Dkt. 652 at 25:9-13.) The Government told the Court that the paragraph was "an accurate statement of the law." (RT 9/4/26, Vol. XII, 12:6-7.) The Opposition does not mention it.

Every item the Opposition offers on fear concerns the shooting or its aftermath. (Opp. at 13-14.) The Opposition thus treats the shooting as both the last act of the course of conduct and the source of the fear that course of conduct must cause. But at every moment of the surveillance and following, on the Government's own account, the circumstances known to Tyquian Bowman were none, and the instruction measures the fear by those circumstances. If the attack that ends a course of conduct can supply the fear, every shooting preceded by an approach is a stalking, and the element does no work. (Mot. § IV.B.) The 911 caller's fear (Opp. at 14) is not evidence on this element at all. The statute and the instruction measure the effect on "that person" - Tyquian Bowman - not on a caller to 911. 18 U.S.C. § 2261A(2)(A).

Nor does 18 U.S.C. § 2261(b)(1) help the Opposition. (Opp. at 15.) It sets the penalty for one who "violates ... section 2261A" "if death of the victim results." It presupposes a completed violation of § 2261A, with every element, and does not convert conduct that ends in a death into a stalking.

**C. The substantial-emotional-distress alternative**

The Opposition's answer to the second alternative is that the statute reaches attempts, which need not be completed. (Opp. at 11, 23 (citing *United States v. Macias-Valencia*, 510 F.3d 1012, 1014 (9th Cir. 2007)).) *Macias-Valencia* says that attempt is inchoate - that the result need not occur. It does not say that an attempt can be committed without the intent to bring the result about. Attempt requires "specific intent even if the crime attempted does not." *United States v. Gracidas-Ulibarry*, 231 F.3d 1188, 1192 (9th Cir. 2000) (en banc) (quoting *United States v. Hadley*, 918 F.2d 848, 853 (9th Cir. 1990)). *See also United States v. Castro Alavez*, 167 F.4th 1056, 1063 (9th Cir. 2026) ("criminal attempt requires specific intent even when the underlying crime does not"). The attempt variant therefore requires evidence that someone intended the course of conduct to cause Tyquian Bowman substantial emotional distress. The Government's evidence, as the Opposition describes it, is of a course of conduct designed so that he would never know of it. An attempt to cause distress is not made by concealing from its object the conduct meant to cause it. (Mot. § IV.C.)

The "would be reasonably expected to cause" variant fails for the same reason, as the Opposition's own authority shows. The Opposition reads *United States v. Uhlenbrock*, 125 F.4th 217 (5th Cir. 2024), as holding that clandestine conduct can be stalking. (Opp. at 14.) Its own description of the case says otherwise: the defendant had posted the victim's images before, she had discovered them, and so a "rational jury could conclude that he expected that she would also learn about his" later posts. (Id. (quoting 125 F.4th at 226).) Liability in *Uhlenbrock* ran through the expectation that the victim would learn of the conduct - and she did. Here, on the Government's account, the expectation was the reverse. The Government's closing made the same assumption: "did

all of that conduct, the victims knew about it, would that cause them substantial emotional distress? Of course it would." (RT 9/8/26, Vol. XIII, 34:8-11.) The premise - "the victims knew about it" - is the fact the Opposition concedes was absent. (Opp. at 12, 15.)

*United States v. Elkins*, 725 F. Supp. 3d 570 (N.D. Tex. 2024), *aff'd in part, vacated in part on other grounds*, 161 F.4th 899 (5th Cir. 2025), which the Opposition quotes for the proposition that the victim need not be "subjectively aware of each use of a facility of interstate commerce" (Opp. at 11 (quoting id. at 574)), rejected an argument Mr. LINDSEY has not made. He contends that the course of conduct must have its effect on the person it targets, which is what *Elkins* said next: "A defendant's 'course of conduct' against the victim is what must 'place[] that person in reasonable fear of . . . death . . . or serious bodily injury' or 'cause, attempt[] to cause, or . . . be reasonably expected to cause substantial emotional distress.'" Id. at 574. *Elkins* was decided on a motion to dismiss, on the indictment's allegations. The affirmance the Opposition cites did not reach the point: the Fifth Circuit decided a question under 18 U.S.C. § 924(c) and affirmed the remainder without discussing the victim's awareness. 161 F.4th at 909, 912.

What is said in this Section applies to Count Three. Instruction No. 26 states the third element for Saviay'a Robinson in the same words, including that the fear "must have been reasonable under the circumstances known to Saviay'a Robinson at the time." (Dkt. 652 at 31:18-24, 32:10-14; Mot. § III.E.) The Opposition's evidence of his fear and distress is that he was shot four times, was "gasping for breath," and died (Opp. at 2, 13-14) - the shooting and its aftermath, not the course of conduct. On the Government's own account, Saviay'a Robinson never knew he was being followed, and the first thing he experienced was the gunfire. A man cannot fear what he never perceives, and the course of conduct ended with the gunfire; nothing before it reached him.

Because the effect element fails as to everyone, the co-conspirator route for Count Two fails at its first element as well, which requires that someone "committed the crime of stalking Tyquian Bowman." (Dkt. 652 at 30:11-13; Mot. § IV.D.)

## IV. COUNT ONE - THE CONSPIRACY TO STALK TYQUIAN BOWMAN

The Opposition says that Mr. LINDSEY "claims that the only evidence of his knowing agreement to stalk Bowman was limited to PW-3's testimony about PW-3's conversations with defendant Lindsey." (Opp. at 13.) The Motion made a different argument: that the evidence on the second element of Instruction No. 18, taken as a whole and in the light most favorable to the Government, shows presence and association, which the instruction says is not membership. (Mot. § V.) The travel and location evidence the Opposition lists (Opp. at 13) is evidence of presence and association. Instruction No. 18 told the Jury that "a person does not become a conspirator merely by associating with one or more persons who are conspirators, nor merely by knowing that a conspiracy exists" (Dkt. 652 at 21:17-19), and Instruction No. 20 that "[m]ere presence at the scene of a crime or mere knowledge that a crime is being committed is not sufficient" (id. at 23:2-4). The Opposition also describes Mr. LINDSEY as "laughing and celebrating with his co-conspirators" after the shooting, citing Exhibit 33. (Opp. at 13.) Exhibit 33 is a set of surveillance stills from a restaurant. The witness who identified Mr. LINDSEY in it answered the Government's description of him, "Holding a drink and two bags?", with "Yes," and testified that the discussion there was "[a]bout getting flights back home." (RT 8/31/26, Tr. 127:6-128:14.) No witness described Mr. LINDSEY laughing; the words are the Government's closing (RT 9/8/26, Vol. XIII, 27:23-28:1), not testimony. And a photograph taken after the fact is not evidence of an agreement made before it.

What the Opposition does not identify is the agreement. Its statement that Mr. LINDSEY "agreed to participate" (Opp. at 4) cites nothing. Mr. Jones described a group call and attributed the words on it to others (RT 8/31/26, Tr. 40:19-42:7), and when the Government asked whether he could hear Mr. LINDSEY's voice on that call, he answered, "I don't believe he really said nothing" (id. at 90:20-23). Mr. Grant agreed that he could not tell the Jury what Mr. LINDSEY "was told," what "he agreed to," or what

"he was promised, if anything" (Vol. X at 35:21-36:9), and the FBI supervisory special agent agreed that the investigation never recovered "a single message from David Lindsey agreeing to be part of anything" (id. at 267:3-6). The Opposition does not address that testimony.

## V. IN THE ALTERNATIVE, THE COURT SHOULD GRANT A NEW TRIAL UNDER RULE 33

### A. The standard

The Opposition's Rule 33 standard comes from the Second Circuit: a court "may not reweigh the evidence and set aside the verdict simply because it feels some other result would be more reasonable." (Opp. at 17 (quoting *United States v. Archer*, 977 F.3d 181, 188 (2d Cir. 2020)).) In this Circuit, the Court on a Rule 33 motion "need not view the evidence in the light most favorable to the verdict; it may weigh the evidence and in so doing evaluate for itself the credibility of the witnesses." *United States v. Alston*, 974 F.2d 1206, 1211-12 (9th Cir. 1992) (quoting *United States v. Lincoln*, 630 F.2d 1313, 1319 (8th Cir. 1980)). *Accord United States v. Kellington*, 217 F.3d 1084, 1095, 1097 (9th Cir. 2000) (affirming the grant of a new trial). And *Archer* itself confined its standard to a motion "based on the weight of the evidence alone"; the sentence that follows the one the Opposition quotes excepts a case "where an evidentiary or instructional error compromised the reliability of the verdict." 977 F.3d at 188-89. Mr. LINDSEY's joinder, evidentiary, and instructional grounds (Sections V.C and V.D) are of that kind.

### B. The weight of the evidence

The Opposition answers the weight argument by referring to its sufficiency discussion. (Opp. at 18.) It does not address the credibility evidence the Motion set out, including Mr. Jones's testimony that his first interview "was part lies." (RT 8/31/26, Tr. 220:20-22; Mot. § VI.B.) Nor does it address the Motion's point about the Verdict Form. (Mot. § VI.B.) The Opposition's own account of why Mr. LINDSEY went is that he was told he "would be rewarded ... if [he] agreed to kill Bowman." (Opp. at 4.) That is the account the Jury heard as the Government's proof of Counts Four and Five, and it

convicted no one on those Counts. The Government's closing gave the Jury one reason for his agreement: "So why did they agree to commit the murder? You heard why. Money." (RT 9/8/26, Vol. XIII, 52:15-16.) The Motion does not call the verdicts inconsistent; it says that the Court, which may weigh credibility for itself on this Motion, may give weight to the Jury's refusal to act on that account when it was offered as proof of Counts Four and Five. On one point the Opposition takes a side. Its statement of facts adopts Mr. Grant's account of the morning of August 19: that he and PW-1 went to Bowman's hotel in the BMW, and that Mr. LINDSEY and others traveled downtown afterward. (Opp. at 6 (citing RT 9/1/26, Tr. 97-98, 100-105).) Mr. Hester's own account was that he rode to the hotel in the Infiniti, with Mr. LINDSEY. (RT 8/27/26, Tr. 7:13-20.) Mr. Jones testified that Mr. LINDSEY did not go to the hotel that morning (RT 8/31/26, Tr. 230:17-24), and the Government's cell-site analyst did not place his telephone there (RT 8/28/26, Tr. 208:18-209:15, 252:13-21). Mr. Hester is also the only witness who described Mr. LINDSEY walking into the dispensary (RT 8/27/26, Tr. 15:1-17:19); Mr. Jones, who placed Mr. LINDSEY in the Infiniti at the dispensary, described no such walk (RT 8/31/26, Tr. 100:1-107:10). The Government does not adopt his account of that morning. The Court, weighing the evidence for itself, need not either.

**C. Joinder and the evidentiary rulings**

Joinder. The Opposition relies on the Court's pretrial order denying severance and on the rule that co-conspirators are generally tried together. (Opp. at 18 (citing Dkt. 386 at 3; *United States v. Marcello*, 731 F.2d 1354, 1360 (9th Cir. 1984)).) The Motion does not quarrel with the rule. It relies on what happened at trial (Mot. § VI.C), and the Opposition does not address that record, including the Court's own description of the proceeding as "15 trials sort of happening simultaneously" (RT 8/27/26, Tr. 91:17-19) and its sidebar instruction to the Government not to bring into this trial the subject matter it had severed: "That is the reason why I granted the severance." (RT 8/26/26, Tr. 246:22-24.) The general admonitions the Opposition cites (Opp. at 18-19) assume that the specific limitations were given. Several were not.

Exhibits 124 and 125. The Opposition defends these exhibits as co-conspirator statements. (Opp. at 19-20.) The Court made no Rule 104(a) finding as to Mr. LINDSEY. When he renewed his objection - “There has been no ruling as far as Mr. Lindsey as far as these four exhibits” - the Court denied it, explaining that “[w]hether or not the jury believes that that was what was going on here, of course, is a very big if.” (RT 8/24/26, Tr. 254:23-255:9.) That leaves the preliminary question to the Jury. The Rules assign it to the Court. Fed. R. Evid. 104(a). As the Court’s own order states, the Government must establish the foundation by a preponderance of the evidence, *Bourjaily v. United States*, 483 U.S. 171, 175-176 (1987), and must produce “some independent evidence which, viewed in light of the co-conspirator statements, establishes the requisite connection between the accused and the conspiracy.” (Dkt. 605 at 2 (citation omitted).) The Opposition’s cases on statements made before a defendant joins a conspiracy (Opp. at 20) presuppose that finding; they do not dispense with it.

Mr. LINDSEY corrects one statement in the Motion. It described Exhibits 124 and 125 as messages from the weeks after November 6, 2020. (Mot. § VI.C.) Exhibit 124 is dated November 23, 2020 (RT 8/25/26, Tr. 246:3-8); Exhibit 125 is dated December 25, 2022, about four months after August 19, 2022 (id. at 251:19-25). The correction sharpens the point. The Opposition says Exhibit 125 was admissible because it “showed that the conspiracy to kill Bowman post-dated the August 2022 murder.” (Opp. at 20.) A co-conspirator statement is admissible against a defendant only if a conspiracy existed when the statement was made and the defendant had knowledge of, and participated in, that conspiracy. (Dkt. 605 at 2.) The Opposition points to no evidence that Mr. LINDSEY was a member of any conspiracy in December 2022. Nor can membership be supplied by implication. The agreement the Opposition attributes to Mr. LINDSEY was formed in August 2022 for the trip to Los Angeles (Opp. at 4); on its own account the return flights were booked within the hour of the shooting (Opp. at 7 n.3, 8), and nothing it cites connects him to anything after. A declaration made four months later is one made “after those objectives either had failed or had been achieved.” *Krulewitch v. United States*, 336

U.S. 440, 442 (1949). The Supreme Court has twice refused to extend a conspiracy, for hearsay purposes, by implying a continuing agreement the evidence does not show. *Id.* at 444; *Grunewald v. United States*, 353 U.S. 391, 401-02, 405-06 (1957).

Exhibit 228. The Opposition is right that the Court instructed the Jury that the exchange in Exhibit 228 "is simply not evidence of any sort against Mr. Lindsey" (RT 8/27/26, Tr. 91:13-16), after the Government agreed that a limiting instruction was appropriate as to him (id. at 89:5-13). (Opp. at 20.) The Motion's statement that Exhibit 228 was admitted without limitation was mistaken, and Mr. LINDSEY withdraws it.

Exhibit 292. The Opposition now defends Exhibit 292 as "a co-conspirator statement" properly admitted "with no limiting instruction." (Opp. at 20.) Before trial, the Government represented that it "will not offer Exhibit 292 for its truth," and the Court denied Mr. LINDSEY's motion as to that exhibit as moot because "the Government states it is not offering [it] under Rule 801(d)(2)(E), if at all." (Dkt. 605 at 1, 3.) The Government cannot disclaim the theory to moot the motion and invoke it to defend the verdict. The in-furtherance findings the Opposition cites (Opp. at 21 (citing Dkt. 605 at 4)) were made as to other exhibits; the Court made none as to Exhibit 292, because the Government had disclaimed the theory. And the Opposition's own description of the call - one "celebrating and mocking the death of S.R." (Opp. at 21) - is a description of commentary on a past event, and the Court's order recognizes that "[n]arrations of past events are inadmissible." (Dkt. 605 at 2.) Mr. LINDSEY's renewed request for a limiting instruction was overruled (Vol. X at 133:8-13), and the agent agreed that "David Lindsey is not on that call" (id. at 267:1-2). In this Circuit, "mere conversation between conspirators" and "merely narrative declarations" are not in furtherance of a conspiracy; a statement "must further the common objectives of the conspiracy." *United States v. Fielding*, 645 F.2d 719, 726 (9th Cir. 1981) (quoting *United States v. Eubanks*, 591 F.2d 513, 520 (9th Cir. 1979)). A call that, in the Opposition's own words, was "celebrating and mocking" a death five days earlier furthered nothing.

Exhibit 201. The Court undertook that, "at the end of the case, I'll make it clear to the jury that they understand that Exhibit 201 is not to be used against Mr. Lindsey or Mr. Banks." (RT 8/26/26, Tr. 318:1-6.) The written charge contains no such instruction (see Dkt. 652), and the Opposition does not say that one was given. It says the exhibit does not mention Mr. LINDSEY and that the general admonitions sufficed. (Opp. at 21.) The Court did not think so when it made the undertaking, and the general instruction applies only "when I have instructed you to consider certain evidence in a limited way." (Dkt. 652 at 7:22-24.) Where a limiting instruction is promised and not given, "there is no question that the district court erred," and the Ninth Circuit has ordered a new trial on that ground even on plain-error review, where the evidence against the defendant was not overwhelming and the Government used the unlimited evidence in closing. *United States v. Sauza-Martinez*, 217 F.3d 754, 760-61 (9th Cir. 2000). Here the limitation was requested by Mr. LINDSEY and undertaken by the Court on the record (RT 8/26/26, Tr. 317:16-318:6).

Mr. Hester's testimony. The Opposition addresses the testimony the Court struck. (Opp. at 21 (citing RT 8/26/26, Tr. 241:4-19).) The Motion did not claim that ruling went unremedied. (Mot. § VI.C.) The limitation it challenged concerns testimony that came afterward: Mr. Hester's account of a private conversation, about which the Court said at sidebar that it could see "under no theory that that conversation ... could be a co-conspirator statement," and asked whether counsel wanted a limiting instruction. Mr. LINDSEY's counsel said yes. (RT 8/26/26, Tr. 243:12-245:23.) The Jury was then told only, "Counsel, you may proceed." (Id. at 247:5.) The Opposition does not say that a limiting instruction was given. *See Sauza-Martinez*, 217 F.3d at 760 (the court "was obligated to offer a limiting instruction sua sponte" when the evidence came in and in its final charge).

**D. The instructions**

Specific unanimity. The Opposition relies on the general rule. (Opp. at 22-23.) It does not address the exception the Motion invoked: a specific unanimity instruction is

required where the record presents a genuine possibility of jury confusion, or of different jurors resting on different acts. (Mot. § VI.D (discussing *United States v. Ruiz*, 710 F.3d 1077 (9th Cir. 2013), and *United States v. Payseno*, 782 F.2d 832 (9th Cir. 1986)).) The record here presented both: acts attributed to Mr. LINDSEY that the Government's own witnesses contradicted (Section V.B), and two jury notes, one asking about the conspiracy instruction's passage on agreement and membership and the other asking for "the definition of the word intent in the context of intent to kill, injure, harass or intimidate" in the first element of Count Three. (RT 9/10/26, Vol. XV, 3:3-18.) A note of that kind is what separates the cases that required the instruction from those that did not. In *United States v. Echeverry*, 698 F.2d 375 (9th Cir.), *modified*, 719 F.2d 974 (9th Cir. 1983), the jury "indicated its confusion ... by submitting a written question during its deliberations," the court's answer left the jurors free to rest on different facts, and the Ninth Circuit reversed because it was "not free to hypothesize whether the jury indeed agreed." *Id.* at 376-77. The Ninth Circuit has distinguished *Echeverry* where "there was no communication or other indication from the jury suggesting that it was in any way confused." *United States v. Anguiano*, 873 F.2d 1314, 1319 (9th Cir. 1989). The inquiry considers the indictment, the clarity of the Government's argument, the complexity of the evidence, and the clarity or ambiguity of the instructions, *United States v. Lapier*, 796 F.3d 1090, 1097 (9th Cir. 2015), and "[w]hen a jury makes explicit its difficulties a trial judge should clear them away with concrete accuracy." *Bollenbach v. United States*, 326 U.S. 607, 612-13 (1946). Nor does the Opposition address the second refused sentence, that "[e]ach of the acts that you rely upon must have been directed at" the named victim (Dkt. 566 at 30-31, 43), which answered the question the Jury asked. The harmlessness standard the Opposition invokes asks whether "it is clear beyond a reasonable doubt that a rational jury would have found the defendant guilty absent the error." (Opp. at 22 n.5 (quoting *United States v. Thongsy*, 577 F.3d 1036, 1043 (9th Cir. 2009)).) On a Count where every participant named someone else as the object, and the Jury asked what intent meant, it is not.

Subjective awareness. The Opposition defends the sentence that the substantial-emotional-distress alternative "does not require proving subjective awareness on the part of the victim" on the ground that the statute reaches attempts. (Opp. at 23.) That was the Court's stated reason at the charge conference as well. (RT 9/4/26, Vol. XII, 13:17-14:3.) But the sentence was not confined to attempts. It applied to the whole alternative - a course of conduct that "caused, attempted to cause, or would be reasonably expected to cause" distress (Dkt. 652 at 24:24-26, 25:24-28) - and its rationale reaches only the middle term. Even as to attempts, the rationale assumes the intent to cause distress that Section III.C shows the record lacks.

Co-conspirator liability. The Opposition's authorities on the *Pinkerton* instruction are addressed in Section II.C.

**E. Cumulative effect**

The Opposition's answer to cumulative error is that there was no error. (Opp. at 24.) Sections V.C and V.D show otherwise, and their combined effect, on a record this thin as to Mr. LINDSEY, is the ground the Motion stated. (Mot. § VI.E.)

## VI. CONCLUSION

For these reasons and those stated in the Motion, the Court should enter judgment of acquittal on Counts One, Two, and Three and vacate the special findings returned under Instruction Nos. 22 and 27. In the alternative, the Court should grant the reserved Motion to Sever and order a new trial of Mr. LINDSEY on those Counts under Rule 33.

Respectfully submitted,

Dated: October 21st, 2026

/s/ TILLET J MILLS II
**TILLET J MILLS II**

## CERTIFICATE OF COMPLIANCE

The undersigned, counsel of record for Defendant David LINDSEY, certifies that this brief contains 6,837 words, which complies with the word limit of L.R. 11-6.1.

Dated: October 21st, 2026

/s/ TILLET J MILLS II
**TILLET J MILLS II**